**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

YAHYA MUHAMMED ABDULLAH MUNTAQIM,

                    **Plaintiff,**

  vs.                                         9:17-CV-1043
                                                      (MAD/DJS)

ANTHONY ANNUCCI, *et al.*,

                    **Defendant.**

---

**APPEARANCES:**                                   **OF COUNSEL:**

YAHYA MUHAMMED ABDULLAH MUNTAQIM
90-A-4444
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York
Plaintiff *pro se*

OFFICE OF THE NEW YORK             **MARK G. MITCHELL, AAG**
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 20, 2017, *pro se* plaintiff Yahya Muhammed Abdullah Muntaqim ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights. *See* Dkt. No. 1-3 at 1, 4. After initial review pursuant to 28 U.S.C. §§ 1915(e) & 1915A and an amendment of Plaintiff's complaint, only Plaintiff's Fourteenth Amendment due process claim against four defendants — Anthony Annucci, Robert Cusack, Anthony Polizzi, and Donald Venettozzi (collectively, "Defendants") — remains. *See*

Dkt. No. 40 at 2. In an August 21, 2019 Report-Recommendation and Order, Magistrate Judge Stewart recommended that the Court grant Defendants' motion for summary judgment. *See* Dkt. No. 40. Specifically, Magistrate Judge Stewart found that Plaintiff's due process claim against Defendants fails because Plaintiff failed to "establish a protected liberty interest entitling [him] to due process." Dkt. No. 40 at 9. For the reasons that follow, the Court affirms Magistrate Judge Stewart's Report-Recommendation and Order in its entirety.

## II. BACKGROUND

On April 8, 2016, Plaintiff, then an inmate at Shawangunk Correctional Facility, received a misbehavior report from Officer Katz, who charged him with violating two inmate rules: Rule 180.14, failing to comply with staff instructions for urinalysis testing, and Rule 106.10, failing to obey a direct order. *See* Dkt. No. 34-11 at 8. On April 13, 2016, Defendant Polizzi served as the hearing officer for the Tier III disciplinary hearing on these charges. *See id.* at 9. There, Plaintiff pleaded not guilty to the charges and claimed that because of his enlarged prostate, and possibly because of his shy bladder syndrome, he has difficulty urinating. *See id.* After reviewing the evidence, Defendant Polizzi determined that Plaintiff was guilty of the two charges and imposed a penalty of 180 days in the Special Housing Unit ("SHU") and the corresponding losses of package, commissary, and phone privileges. *See id.* at 11.

Plaintiff appealed this disposition, which DOCCS's Office of Special Housing/Inmate Disciplinary Program affirmed. *See id.* at 11-12. Plaintiff then filed an Article 78 proceeding in New York state court, which was transferred to the Appellate Division, Third Department. *See id.* at 12. On September 14, 2017, the Third Department annulled the determination and remitted the matter to DOCCS after finding that Defendants had failed to procure the medical evidence

that Plaintiff had requested, which might have been relevant to his defense of suffering from the effects of an enlarged prostate. *See* Dkt. No. 41-1 at 13.

Upon remand, between September 28, 2017 and October 6, 2017, Commissioner's Hearing Officer ("CHO") Bullis presided over a second Tier III hearing on the charges against Plaintiff, who was now housed at Clinton Correctional Facility. *See id.* at 13. There, Plaintiff again pleaded not guilty to the charges. *See id.* After reviewing the evidence—which included three pages of Plaintiff's medical records and new testimony from Charles Simpson, the Nurse Administrator at Clinton Correctional Facility—CHO Bullis found Plaintiff guilty of charge 180.14, urinalysis testing violation. *See id.* at 15. CHO Bullis then imposed a penalty of 152 days in SHU with the corresponding losses of package, commissary, and phone privileges. *See id.* Because Plaintiff had already served 152 days in SHU as a result of the April 2016 hearing, he did not face additional penalties as a result of the October 2017 rehearing. *See id.* at 15 n.4. Plaintiff did not file an administrative appeal challenging the October 2017 rehearing. *See id.*

Currently before the Court is Magistrate Judge Stewart's Report-Recommendation and Order recommending that the Court grant Defendants' motion for summary judgment against Plaintiff. *See* Dkt. No. 40 at 10.

### III. DISCUSSION

A.  **Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at

36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has instructed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, 00-CV-3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v.*

*Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.     Application**

Although Plaintiff filed objections to Magistrate Judge Stewart's Report-Recommendation and Order, these objections amount to little more than conclusory statements and recitals of the accusations levied in the complaint. *See* Dkt. No. 41 at 2. Plaintiff's objections, at their most specific, state the following arguments: "[Y]ou can see the Personal involvement of these Defendants[.] . . . You can see that the Administratively [sic] do not Tell the True [sic] about Appeals to the commissioner[.]  I OBJECT TO THIS REPORT ALL OF IT." *See* Dkt. No. 41 at 2. Plaintiff's objections would thus seem to fit neatly under the category of "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge[.]" *O'Diah*, 2011 WL 933846, at *1 (citations and footnote omitted). Furthermore, Plaintiff does not allege any facts in his objections that indicate any error on the part of Magistrate Judge Stewart in his Report-Recommendation and Order. *See* Dkt. No. 41 at 1-2.

5

Thus, having carefully reviewed the August, 21, 2019 Report-Recommendation and Order and the applicable law, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff failed to establish a valid liberty interest and that, as a result, his due process claim fails. *See* Dkt. No. 40 at 10. As Magistrate Judge Stewart correctly determined, as a result of the second Tier III disciplinary hearing, only twenty-eight days of SHU confinement can be attributed to the sentence imposed at the initial Tier III hearing. *See Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (holding that the result of the first hearing did not deprive the plaintiff of due process because his "confinement in SHU was entirely attributable to the ruling following the second hearing, given that the result of the first hearing was administratively overruled and that [the plaintiff's] sentence following the second hearing credited his prior time in SHU") (citation omitted). Since Plaintiff has failed to set forth any conditions of his SHU confinement that were unusual when compared with those normally associated with SHU confinement in New York, and because only twenty-eight days of his confinement are attributable to the first Tier III hearing, Plaintiff has failed to establish a protected liberty interest, which is fatal to his due process cause of action. *See Richard v. Leclaire*, No. 9:15-cv-6, 2017 WL 9511181, *16 (N.D.N.Y. July 10, 2017) (citations omitted). Accordingly, Magistrate Judge Stewart correctly determined that the Court should grant Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully considering Magistrate Judge Stewart's Report-Recommendation and Order, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 34) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 16, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge